UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| APRIL MICHELLE WALTERS,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No.  12-cv-05411-NJV<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND REMANDING CASE FOR FURTHER CONSIDERATION**<br><br> (Doc. 19, 20) |

## I. BACKGROUND

April Walters ("Plaintiff") seeks judicial review of an administrative law judge ("ALJ") decision dated June 22, 2011.  *See* Administrative Record ("AR") 25-38.  Pursuant to 42 U.S.C.A. §405(g), this court has subject matter jurisdiction over final decisions of the Commissioner of Social Security.  The ALJ's decision became the Acting Commissioner's final decision once the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  Doc. No. 20.  The parties have consented to this court's jurisdiction.  Docs. 4, 6.  Therefore, this court may review and decide the parties' motions for summary judgment.

For the reasons set forth below, the undersigned will grant Plaintiff's motion for summary judgment, deny Defendant's motion for summary judgment and remand the case for further consideration.

## II.   PROCEDURAL HISTORY

Plaintiff states that she is afflicted with physical and mental impairments and has not worked since April 30, 2006. AR 47, 285. On December 10, 2009, Plaintiff filed an application for Title II disability benefits.[1] AR 237-44. Plaintiff alleged an onset date of disability of April 30, 2003, and amended that date to December 2, 2009. AR 47. On February 18, 2010, Plaintiff's claim was denied. AR 182-185. On June 22, 2010, Plaintiff's claim was denied on reconsideration. AR 79. On June 29, 2010, Plaintiff filed a request for a hearing. AR 161. On June 14, 2011, the hearing was held in front of Administrative Law Judge Paul Robeck. AR 22-38. On June 22, 2011, Judge Robeck denied Plaintiff's claim. *Id.* On July 19, 2011, Plaintiff requested an Appeals Council review. AR 21. On August 13, 2012, Plaintiff's request for review was denied. AR 8-13.

## III.   STATEMENT OF FACTS

Plaintiff's physical impairments include severe chronic back pain, Myofascial Pain Syndrome, Fibromyalgia, migraine headaches and a history of chronic pain. AR 363,481-2, 508 -509. The assessment of Plaintiff's condition by Jaime Nicacio, M.D., dated February 18, 2009, included Fibromyalgia and possibly regional myofascial pain with a list of specific areas of discomfort in her C-spine. AR 482. Dr. Nicacio saw Plaintiff again on July 13, 2009, for a followup because Plaintiff experienced a "flare-up." AR 471. He noted an appearance of active synovitis of her MCP joints bilaterally with increased redness and swelling and pain to palpation. *Id*. Plaintiff was referred to Theresa Karplus, M.D., a rheumatologist, who opined on January 28, 2009, that "it is quite reasonable to proceed with treatment for fibromyalgia." AR 349.

On February 2, 2011, Shahram Abbassi, M.D., examined Plaintiff and found tender points that correlated with most of the 18 out of 18 criteria tender points. AR 509. His diagnosis was generalized pain which may be secondary to fibromyalgia. *Id.* He recommended

---

[1] Plaintiff has received Supplemental Social Security income in the past ("SSI"). In her SSI application she claimed that she became disabled on April 1, 1994. AR 80-140. The SSI payments resulted in an overpayment of $3,690.18. AR 139. Plaintiff challenged a demand for repayment. AR 139. Plaintiff's challenge failed, and the overpayment was recouped through a tax refund offset. AR 139. Plaintiff has not provided this Court with details of her eligibility for SSI and the information regarding payments of SSI.

1  multidisciplinary pain management, collaboration with a psychiatrist or pain psychologist, and
2  cessation of smoking. *Id.*
3      Plaintiff's mental impairments include Bipolar Affective Disorder ("BPAD"), anxiety with
4  agoraphobia, Attention Deficit Disorder ("ADD") and insomnia. AR 558. On January 19, 2010,
5  Plaintiff was diagnosed by Jeffrey Hansen, M.D., with BPAD type II. AR 562. Dr. Hansen
6  continued to treat Plaintiff until October 25, 2010. AR 558. Dr. Hansen opined that Plaintiff is
7  "100% disabled." AR 559.
8      On March 12-15, 2010, Plaintiff was hospitalized following an attempted suicide. AR
9  415-45.
10      Michael Regets, Ph.D., a medical consultant employed by the State for the purpose of
11  evaluating Plaintiff's disabilities, issued his opinion on Plaintiff's mental impairments on January
12  25, 2010. AR 393 - 405. When preparing Plaintiff's evaluation for the eligibility of Title II
13  benefits, Dr. Regets prepared a Psychiatric Review Technique form ("PRT"). *See* AR 393- 405.
14  The PRT form identifies medical diagnoses and the functional limitations of those diagnoses. *Id*.
15  The PRT form lists nine categories of mental disorders which are encompassed in Section 12 of
16  the SSA disability listings. AR 393; 20 C.F.R. Pt. 404, Sub. P., Appdx 1, § 12. The medical
17  consultant is there to evaluate Plaintiff's medical conditions and then specify the degree of
18  limitations of those medical conditions. AR 393 - 405.
19      In the PRT form, Dr. Regets assessed Plaintiff's Affective Disorders, 12.04, and Anxiety-
20  Related Disorders, 12.06. AR 393. With respects to 12.04, Dr. Regets found that Plaintiff has
21  depressive syndrome characterized by feelings of guilt or worthlessness and thoughts of suicide.
22  AR 396. Dr. Regets also found that Plaintiff has manic syndrome that is characterized by
23  pressures of speech. AR 396. Dr. Regets further found that Plaintiff has BPAD II. AR 396. At
24  the 12.06 listing, Dr. Regets found that Plaintiff has "a persistent irrational fear of a specific
25  object, activity or situation which results in a compelling desire to avoid the dreaded object,
26  activity or situation." AR 398.
27      Next Dr. Regets assessed Plaintiff's functional limitations resulting from Plaintiff's mental
28  disorders. AR 403. Dr. Regets found that Plaintiff has: (1) a mild restriction of activities of daily

United States District Court
Northern District of California

living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence or pace and (4) no episodes of decompensation. AR 403.

On June 15, 2010, another State employed medical consultant, Carla van Dam, Ph.D., issued a one sentence medical opinion affirming Dr. Regets' findings. AR 484.

Plaintiff's treating physician, Dr. Herbert Tanenhaus, M.D., issued his opinion on Plaintiff's disabilities on May 17, 2011. AR 573. Dr. Tanenhaus stated that Plaintiff's diagnoses include Bipolar Affective Disorder, Attention Deficit Disorder, Fibromyalgia, migraine headaches, and hyperthyroidism. AR 573. Dr. Tanenhaus stated that, during different visits, Plaintiff was hypomanic, depressed and euthymic. AR 573. Dr. Tanenhaus found that Plaintiff's manic and depressive episodes had been difficult to control with medication or other behavioral treatments such as meditation. AR 573. Dr. Tanenhaus did not have the records of Plaintiff's prior psychiatric treatments when he treated her. AR 573. Plaintiff's medications include Topamax, Methylphenidate-ER and Lexapro. AR 573. Dr. Tanenhaus explained that Plaintiff's medications have been "partially effective" in treating her conditions. AR 573.

Dr. Tanenhaus also found that Plaintiff exhibits depressive episodes of loss of energy, irritability and suicidal thinking. AR 573. Dr. Tanenhaus described Plaintiff's ability to maintain social relationships as moderately impaired. AR 574. He based that assessment on Plaintiff's lack of friendship and "partial estrangement" from her husband and children. AR 574. Dr. Tanenhaus equated this to Plaintiff's work environment and found that she lacks the ability to "accept supervision or relate appropriately with co-workers or the public." AR 574. Dr. Tanenhaus also found that Plaintiff has extreme mood swings that impair her activities of daily living and that her most severe impairment is her unreliability. Dr. Tanenhaus continued to treat Plaintiff until at least October of 2011. AR 583- 586.

On June 22, 2011, the ALJ issued a notice of an unfavorable decision. AR 22. In his decision the ALJ found that Plaintiff has not engaged in substantial gainful activity ("SGA") since December 2, 2009. AR 27. He found that Plaintiff has Fibromyalgia, Bi-Polar Anxiety disorder, migraine headaches and that the impairments "more than minimally affect the claimant's ability to perform basic work functions." AR 27.

## IV. LEGAL STANDARD

Pursuant to 42 U.S.C §405(g), the findings of the Commissioner, "as to any fact, if supported by substantial evidence, shall be conclusive." *See* 42 U.S.C § 405(g). The denial of benefits can only be set aside if it is not supported by substantial evidence or if the decision is based on legal error. *See Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d 1453, 1457 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d 947, 954 (9th Cir. 2002). In addition, the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## V. DISCUSSION

Plaintiff presents two issues on appeal: (1) whether the ALJ committed harmful legal error by giving the state psychiatrists' opinions more weight than the opinion of the treating physician, and (2) whether the ALJ made an improper finding under "paragraph B" regarding the impact of mental impairments on Plaintiff's ability to work.

### A. THE ALJ FAILED TO PROPERLY EXPLAIN WHY THE TREATING PHYSICIAN'S OPINION WAS GIVEN "LITTLE WEIGHT"

Plaintiff contends that the ALJ committed harmful legal error when he afforded more weight to the state psychiatrists' opinion than to the treating physician's opinion. Doc. 19 at 5. Defendant contends that the ALJ correctly gave more weight to the state psychiatrist on the basis that he had access to the claimant's entire medical record, while the treating physician only saw Plaintiff five times in seven months. Doc. 20 at 4. Plaintiff argues that five visits in seven months is enough to establish substantial contacts, particularly given that the state physician made his evaluation without seeing her. Doc. 21 at 5. For the reasons stated below, the undersigned will remand the action for further proceedings.

### 1. Applicable Law: The Treating Physician Rule.

Pursuant to 20 C.F.R. § 404.1527(d), the treating physician's opinion is given controlling weight when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with other substantial evidence in the case record." 20 C.F.R. §404.1527 (c)(2). More weight is given to the opinion of the treating physician since it is more likely that this treater has an in-depth knowledge of the claimant's medical history and can present a unique outlook to the case. 20 C.F.R. § 404.1527(c)(2). "The rationale for giving greater weight to a treating physician's opinion is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

If the opinion of the treating physician is contradicted by the state examiner and "if the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) (reversing and remanding because the ALJ did not set out specific and legitimate reasons for discounting the treating physician's diagnosis, leading the court to conclude that the treating physician's opinion was not considered).

However, if the State agency consultant agrees with the treating physician then "clear and convincing" reasons are required to reject the treating doctor's opinion. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Furthermore, when a claimant's medical records reflect that her mental impairments have deteriorated since being examined by the state physician and there is no contradiction in testimony between the treating physician and the state physician, then the "clear and convincing" standard is appropriate. *Ferrando v. Commissioner of Social Sec. Admin*, 449 Fed.Appx. 610, 611 (9th Cir. 2011).[2] (holding that there was no contradiction in medical opinion

---

[2] *Ferrando v. Commissioner of Social Sec. Admin* was not chosen for publication. *See Ferrando*, 449 Fed.Appx. 610 (9th Cir. 2011). However, pursuant to Federal Rule of Appellate Procedure 32.1, " a court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent' or the like: and issued on or after January 1, 2007." Fed. R.App. P. 32.1. Here, *Ferrando*, was noted as "not for publication" and was decided on September 6, 2011. *See id.* at 610. Therefore, the *Ferrando* decision is citable.

because the medical records reflected that the claimant's condition worsened between the first examination in 2005 and the second examination in 2007).

### 2. ALJ's findings

The Plaintiff exhibits signs of "medically determinable impairments" but her statements regarding the severity of the symptoms are not credible. AR 31. The record does not support a conclusion of disability. *Id*. "Some weight" is attributed to the state agency medical consultants and "little weight" is given to the treating physician's opinion. *Id*. "Little weight" is attributed to the treating physician, Dr. Tanenhaus, because he has only examined the Plaintiff five times, relied "quite heavily" on her report of her symptoms and "seemed to uncritically accept as true most, if not all, of what the claimant reported." *Id*. The evidence on record does not support the findings of the treating physician, Dr. Tanenhaus. *Id*. The medical records characterize the Plaintiff's bipolar disorder as stable. *Id*.

### 3. Analysis.

The court agrees with Plaintiff that the ALJ erred in giving little weight to the opinion of Dr. Tanenhaus, the treating physician. The court finds specifically that the ALJ failed to set forth specific, legitimate reasons for doing so that were based on substantial evidence in the record.

"Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's, it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "A "limited observation" of the claimant is not a reason to give preference to the opinion of a doctor who has *never* examined the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "[M]ental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms (as do all doctors) .... To allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders." *Bonilla v. Colvin*, 2013 WL 2445205, 9 (C.D. Cal. 2013).

Here, the state non-examining consultant, in a report dated January 25, 2010, found that Plaintiff was mildly restricted in her daily activities and had mild difficulties in maintaining social

1  functioning. AR 393, 403. The state consultant also found that Plaintiff had moderate restrictions
2  in difficulties in maintaining concentration, persistence, or pace and no episodes of
3  decompensation. AR 403. On June 15, 2010, another state consultant provided a one sentence
4  analysis confirming the opinion of the prior state consultant's opinion. AR 484.

5  In contrast, in a report dated May 17, 2011, the treating physician opined that Plaintiff's
6  previous diagnosis include Bipolar Affective Disorder, Attention Deficit Disorder, Fibromyalgia,
7  migraines and hyperthyroidism. AR 573. The treating physician also found that in the five visits
8  that he saw Plaintiff, she was hypomanic, depressed, and euthymic. *Id*. The treating physician
9  also opined that Plaintiff's most severe impairment was her unreliability. AR 574 .

10  When assigning weight, the ALJ gave "some weight" to the state consultants' opinions,
11  who had not physically examined Plaintiff, and "little weight" to that of the treating physician
12  who examined the Plaintiff five times. AR 28, 31. That the treating physician only saw Plaintiff
13  five times is not a sufficient reason to favor the state physicians who did not see her. *See Lester*,
14  81 F.3d at 830. In addition, the ALJ did not make reference to the medical records that supported
15  his conclusion that the treating physician not be given controlling weight. AR 28-31. The ALJ
16  merely stated that the state consultants' opinions are "consistent with the overall record to which
17  they had access to its entirety". AR 30. Furthermore, while the ALJ noted that the evidence
18  shows that there is "somewhat greater limitations in social functioning," than the state consultant's
19  assessment, the ALJ does not specify what medical records lead to this conclusion. AR 31.

20  When attributing controlling weight to a non-treating source, the ALJ must look at whether
21  medical records support the medical opinion, the consistency of the medical records and other
22  factors. 20 C.F.R. §404.1527 (c) (3) - (6). Here, the ALJ did not take into consideration that the
23  state agency consultants prepared their medical reports at least a year before the treating physician
24  prepared his medical report. AR 31. If the ALJ took the time disparity into consideration, his
25  report denying Plaintiff disability benefits did not reflect this. AR 25-33. Moreover, the ALJ
26  should not discredit the treating physician's opinion simply because he relied heavily on the
27  Plaintiff's subjective opinion, as medical professionals generally rely on their patients reporting
28  when assessing their condition. *See Bonilla*, 2013 WL 2445205 (C.D. Cal. 2013).

8

For the above mentioned reasons, the undersigned remands this action for further proceedings. On remand, the ALJ should first evaluate whether Plaintiff's mental impairments deteriorated from when the state consultant made his evaluation to when the treating physician made his evaluation. *See Ferrando*, 449 Fed.Appx. at 611. Such an initial assessment will allow for a determination of the appropriate standard of review under the treating physician rule. If the ALJ finds that Plaintiff's condition worsened between the times that the State agency consultants prepared their report and the time that the treating physician prepared his, the ALJ must set forth "clear and convincing" reasons when explaining why the treating physician's opinion is not given controlling weight. *See id*. In addition, the ALJ must refer to the medical records that support his conclusion.

**B. WHETHER THE ALJ MADE AN IMPROPER FINDING UNDER "PARAGRAPH B" REGARDING THE IMPACT OF MENTAL IMPAIRMENTS ON PLAINTIFF'S ABILITY TO WORK**

Plaintiff contends that the ALJ erred in finding that she does not meet the "Paragraph B" impact of mental impairments requirement. Doc. No. 19. She argues that the ALJ's findings are not supported by substantial evidence. Doc. No. 19. Defendant contends that the burden of proof is on Plaintiff to show that she meets or equals the listing requirements of "Paragraph B." Doc. No 20, p. 5

**1.     The Five Step process for determining eligibility of disability benefits.**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The Social Security Regulations set out a five-step sequential analysis for evaluating a claimant's application for SSI disability benefits. See 20 C.F.R. § 416.920(a)(4); *Tackett*, 180 F.3d at 1098.

In the first step, the ALJ must determine whether the claimant is currently engaged in substantially gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If so, the claim is denied.

The second step requires the ALJ to determine whether the claimant has a "severe" impairment which significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). If the ALJ concludes that the claimant does not have a "severe" impairment, the claimant is not "disabled" and his claim is denied. *Id*.

If the claimant does have a "severe" impairment, the third step requires the ALJ to determine whether the impairment meets or equals the criteria of an impairment listed in the relevant regulation. 20 C.F.R. § 404, Subpt. P, App. 1; 20 C.F.R. § 416.920(a)(4)(iii) (the "listings" or the "listed impairments"). Where the impairment at issue involves a claimant's mental health, the ALJ must follow a special technique to evaluate the claimant's symptoms and rate his functional limitations. 20 C.F.R. § 416.920a. The ALJ must apply this special technique to each impairment and combination of impairments to determine if the claimant's impairments meet any of the listed impairments.

Before proceeding to the fourth step, the ALJ must evaluate the claimant's residual functional capacity. Then, in the fourth step, the ALJ must determine whether the claimant has sufficient residual functional capacity to perform his past work. 20 C.F.R § 416.920(a)(4)(iv). If so, the claimant is not "disabled" and the claim must be denied. *Id*.

If the claimant proves that he cannot perform past work, the burden shifts to the commissioner in the fifth step of the analysis to establish that the claimant can perform other substantial gainful work. 20 C.F.R. § 416.920(a)(4)(v). If the ALJ fails to meet this burden, the claimant must be found disabled. Id. If a claimant is found to be "disabled" or "not disabled" at any of these steps, the ALJ need not consider the remaining steps. 20 C.F.R. § 416.920(a)(4). Here, Plaintiff contends that the ALJ erred when making his evaluation at step number 3.

**2.     Applicable Law: "Paragraph B"**

At step number 3, the ALJ looks to whether the claimant meets or equals an impairment found in 20 C.F.R. SubPt. P, App.1. In determining whether a claimant with a mental impairment meets a listed impairment, the ALJ considers: (1) whether specified diagnostic criteria

10

1  ("paragraph A" criteria) are met and (2) whether specified functional restrictions are present
2  ("paragraph B" criteria). *Lester*, 81 F.3d at 828.  Under the relevant sections of  paragraph B, the
3  claimant must exhibit two of the following:  marked restriction in activities of daily living;
4  marked difficulties in maintaining social functioning;  marked difficulties in maintaining
5  concentration, persistence or pace; or a marked restriction in one of the areas mentioned
6  previously and repeated episodes of decompensation, each of which must be of extended
7  duration." 20 C.F.R.Pt. § 404, SubPt. P, App.1, Listings 12.04 &12.06.  "The purpose of the
8  functional criteria contained in paragraph B is to measure the severity of the claimant's
9  impairment."  *Lester*, 81 F.3d at 829.

10  Courts "uphold the Commissioner's decision denying benefits if the Commissioner applied
11  the proper legal standard and there is substantial evidence in the record as a whole to support the
12  decision." *Vertigan v. Halter*, 260 F.3d 1044, 1049  (9th Cir. 2001).  "Substantial evidence is
13  relevant evidence which, considering the record as a whole, a reasonable person might accept as
14  adequate to support a conclusion." *Flaten*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The plaintiff has
15  the burden of proof to show that she "meets or equals" a listing, and "the ALJ has the duty to assist
16  in developing the record." *Delorne v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).  "This duty
17  exists even when the claimant is represented by counsel." *Id*.

### 3.  The ALJ's findings

19  The ALJ found that Plaintiff failed to meet the paragraph B requirements.  AR 27. The
20  ALJ states that the reason that Plaintiff does not meet or equal a listing under paragraph B is that
21  "the claimant has a mild restriction" in her daily activities.  AR 28.  The ALJ bases his conclusion
22  that Plaintiff does not meet or equal a listing, on her ability to conduct some daily activities and
23  not on  substantial medical opinion.  AR 28.  The ALJ found that the Plaintiff's daily restrictions
24  were mild because she could drive for long periods of time, yet failed to consider that she took
25  breaks and ended up in hospital unable to drive back.  AR 28.  The ALJ also rejects the notion that
26  Plaintiff attempted suicide because she denied the attempt in later reports.  AR 30, 439.

11

**4. Analysis**

The ALJ failed to properly investigate Plaintiff's claims and failed to explain the "substantial evidence" that led to his conclusion. Although Plaintiff stated that she did not expect death when she took many pills, AR 439, the ALJ failed to explore this at the hearing. AR 60-61. Plaintiff's counsel asked the ALJ if hearing from Plaintiff's husband would assist him in making his decision. AR 75. The ALJ stated that it up to Plaintiff's counsel. AR 75. However, it was the ALJ's duty to ensure that he was informed of "facts relevant to his decision." *Delorne,* 924 F.2d 841, 849 (9th Cir. 1991).

Moreover, the ALJ does not specify substantial evidence when stating the conclusion that Plaintiff exhibits moderate difficulties in regard to concentration, persistence or pace or a moderate to mild difficulty in social functioning. AR 28. The ALJ does not explain how he came to the conclusion that Plaintiff does not show any evidence of decompensation. *Id*. While the ALJ does refer to some evidence, it is not evidence that can reasonably support his conclusion. *Flaten*, 44 F.3d 1453, 1457 (9th Cir. 1995). In addition, the ALJ did not fully inform himself of facts that would be relevant to his decision. *Delorne,* 924 F.2d 841, 849 (9th Cir. 1991).

The undersigned finds that this action must be remanded for further proceedings because the ALJ failed to specify substantial evidence supporting his conclusion that Plaintiff's mental impairments do not "meet or equal" a listing under 12.04 and 12.06. *See* 20 C.F.R. §404, SubPt. P, App.1, Listings 12.04 & 12.06.

**VI. CONCLUSION**

For the aforementioned reasons, the undersigned grants Plaintiff's motion for summary judgment and denies Defendant's motion for summary judgment. The case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

The Clerk is directed to close this case.

**IT IS SO ORDERED**.

Dated: February 6, 2014

_____
NANDOR J. VADAS
United States Magistrate Judge

12